STATE OF MISSOURI Respondent, *vs.* GEORGE W. RAY, Appellant.

1. *Criminal law—Indictment for attempted rape—Challenge and list of jurors.*—In indictment for attempted rape, defendant is not entitled to a peremptory challenge of twelve jurors. (W. S., 449–50, § 32 ; 1102, § 4.) Nor is he entitled to a list of the jurors forty-eight hours before trial. (W. S., 1102, § 8.)

2. *Practice, criminal—Exceptions, not taken in progress of trial, effect of.*—Exceptions, taken in the progress of a trial, occupy the same footing and are governed by the same rules in criminal as in civil cases. And where exceptions are not saved to the rulings of court, they will not afterward be noticed, though the trial be of a criminal nature.

3. *New trial—Motion for—Cumulative evidence.*—The discovery of new evidence, which is merely cumulative, is no ground for a new trial.

4. *New trial—Motion for, should show what.*—In order to obtain a new trial on ground of newly discovered evidence, the applicant must show, 1st. That the evidence has come to his knowledge since the trial : 2nd—That it was not owing to want of due diligence that it did not come sooner : 3rd—That it is so material, that it would probably produce a different result if the new trial were granted : 4th—That it is not cumulative : 5th—The affidavit of the witness himself should be produced or his absence accounted for : 6th—It should appear that the object of the testimony is not merely to impeach the character or credit of a witness.

*Appeal from Caldwell Circuit Court.*

*Hoskinson & McLaughlin,* for Appellant.

*Crosby Johnson,* for Respondent. ·

SHERWOOD, Judge, delivered the opinion of the court.

The defendant, George W. Ray, was indicted by the Grand Jury of Caldwell County for the attempt to ravish one Jennie Wyatt, (a colored girl) in the year 1868. The defendant was not arrested on the *capias* issued on the indictment until 1872. A trial was had at the June term of the Caldwell Circuit Court, and shortly after the arrest, resulting in a verdict of guilty. The evidence was amply sufficient to sustain the charge, and no just ground of complaint can be urged against the instructions, for they, as a whole, presented the case very fairly to the jury. A motion for a new trial was filed, based on these alleged grounds: First—That the defendant was not allowed to challenge twelve jurors in accordance with law: Second—That the jury did not specify the offense or

degree of offense of which defendant was found guilty: Third—That the indictment did not warrant the finding of the jury: Fourth—That the defendant was not arraigned: Fifth—That no list of jurors was delivered to the defendant forty-eight hours prior to the trial: Sixth—That defendant was not personally present during the whole of the trial: Seventh—That the court erred in giving instructions on the part of the State, and in refusing to give certain instructions on the part of defendant: Eighth—That defendant had discovered new evidence since the trial, material to his defense, of which he was unaware at the time of such trial: Ninth—That "defendant was unconscious of what he was doing at the time he announced himself ready for trial in said cause:" Tenth—That the court admitted illegal, and excluded proper, testimony at the trial.

The position is not tenable that the defendant was entitled to a peremptory challenge of twelve jurors, as the offense charged was not punishable by imprisonment for life, nor for more than a specified number of years, and a limit to the duration of the imprisonment, with which the offense may be punished, is declared. (W. S., 449, 450, § 32; 1102, § 4.)

Besides no objection was raised on this point nor exception saved, and therefore, even if defendant's position was correct, there is no evidence before us of that fact, as the motion containing such recital does not establish it.

There is nothing in the point, that the verdict did not specify the offense or degree of offense of which the defendant was convicted. The indictment contains but one charge, the one heretofore mentioned, and the verdict which was in this form:

"We, the Jury, find the defendant guilty, and assess his punishment at a fine of three hundred dollars,

P. S. WILSON, Foreman,"

could, by no reasonable intendment or inference, refer to any other thing but the charge the indictment contained, and that is all that is necessary.

What is meant by saying, that " the indictment did not war-

rant the finding of the jury," is not exactly perceived, unless it be intended thereby, that the verdict is not responsive to the indictment, or that the latter is legally insufficient. As above seen, there was but one charge set forth in the indictment, and the verdict could therefore, by no possibility, refer to any other than that charge.

But if it be meant to question the sufficiency of the indictment, it is enough to observe, that it plainly and concisely charges an offense recognized both by the common law and by the statute; and that in its form and recitals is not obnoxious to criticism.

The fourth and sixth grounds of the motion, that the defendant was not arraigned, and was not personally present during the whole trial, are contradicted by the record itself, affirmatively showing both the arraignment (although informal) and continuous personal presence of the defendant during the whole trial. (See State vs. Braunschweig, 36 Mo., 397.)

The defendant was not entitled to a list of jurors, forty-eight hours prior to the trial, but only before the jury was sworn; and then only if such list were required. (W. S., 1102, §§ 4, 8; State vs. Klinger, 46 Mo., 224.)

The propriety as to the giving or refusal of instructions has been already considered, and that matter will not be further discussed.

If the court admitted illegal, or excluded proper testimony, no exceptions were saved as to its rulings; nor does the bill of exceptions show any erroneous rulings of that sort. Matters of mere exception occupy the same footing and are governed by the same rules, in criminal as in civil cases. (W. S., 1105, § 26; State vs. Marshall, 36 Mo., 400.)

The remaining grounds of the motion, that of newly discovered evidence, and the state of defendant at the time of the announcement of "ready for trial" was made, will now be considered in connection with the affidavits which were filed in support of the motion. And it is to be borne in mind that in criminal cases verdicts are set aside and new trials

granted, for like causes, and under the like circumstances, as in civil cases. (W. S., 1104, § 18.)

It is in evidence that the defendant, together with Daniel Day, was arrested for the offense the very night it is alleged to have been committed, and that they were both placed for safe-keeping in the grand jury room of the Court House. Whether they made their escape, or whether they were released, does not appear. At any rate, according to the defendant's own affidavit, he has been a non-resident of the State ever since 1868, when the crime is charged to have been done, down to the year 1872. It is beyond question, then, that in that year the defendant was apprised of the accusation against him, (that is, if the arrest, the being charged with the offense, and the imprisonment were at all calculated to inform him of that fact,) and this could not fail to make an indelible impression on his memory, and as to who were his companions on the night of his arrest. Besides that, he has had ample time since his second arrest, on April 27th, 1872, up to his trial on the 24th of June next following, to do something, at least, towards preparing for his defense; and yet, not a single subpœna is issued, nor a single witness called in his behalf. The fact of his being a poor man and engaged in making a support for his family by daily labor, did not place beyond his control the process of the court by which the attendance of witnesses from any part of the State could have been secured. Only one of his witnesses is alleged to be a non-resident, and singularly enough the non-residence of _that one_, and the residence of another in Lawrence County, are offered as an excuse for not procuring the attendance of the others. For all that appears in the affidavits, at least _two_, of the four witnesses he mentions, reside in Caldwell County, within easy reach of process. Had a little of the diligence, which was exercised in the twenty-four hours immediately following conviction, been employed in the two months which preceded that event, no application for a new trial on the ground of newly discovered evidence would, in all probability, have had even the flimsy basis of the present one on which to rest.

But the evidence of defendant's absent witnesses, waiving all questions as to a lack of diligence in procuring their attendance, is no ground for granting him a new trial, as that evidence was merely cumulative, that is, of the same import, of the same kind, and to the same point, as that of the witnesses who testified on behalf of the State. (Beauchamp vs. Sconce, 12 Mo., 57; State vs. Larrimore, 20 Mo., 425; Miller vs. Whitson, 40 Mo., 97; Boggs vs. Lynch, 22 Mo., 563; Wells vs. Sanger, 21 Mo., 354.)

So then, it is entirely immaterial, whether the defendant, when "he told his attorneys that he was bound to have a trial," "*was laboring under one of those spells of derangement*" or not; as he not having exercised the slightest diligence would not have been entitled to or allowed a continuance; and as a matter of course, would have been forced to go to trial.

In the State vs. McLaughlin, 27 Mo., 111, this court adopts, with most cordial approval, the rules as laid down in Berry vs. State, 10 Ga., 511, by Judge Lumpkin in respect to new trials, on the ground of newly discovered evidence as follows:

"The applicant must show: First—That the evidence has come to his knowledge since the trial: Second—That it was not owing to the want of due diligence that it did not come sooner: Third—That it is so material, that it would probably produce a different result if the new trial were granted: Fourth—That it is not cumulative: Fifth—That the affidavit of the witness himself should be produced, or his absence accounted for: Sixth—That the object of the testimony is not merely to impeach the character or credit of a witness.

Tested by the rules above laid down, the application we are considering does not comply with them in any particular.

Courts are almost invariably inclined to view these applications with an unfriendly eye, coming, as they most frequently do, from those who in civil cases are smarting under defeat; and in criminal cases from those who are stung to desperation by the infamy of a conviction.

It is not unworthy of note, that the affidavit of defendant,

with respect to the injuries received on his head in 1869, stands entirely unsupported, and no reference is made therein to any one who might be supposed to be cognizant of such fact, if it really existed; and it is certainly a most remarkable and unexplained circumstance, that no one but the defendant himself should have discovered the deranged plight into which he fell at the time the trial came on, and how rapidly he recovered his wonted faculties so soon as it was over.

To permit a party, who is convicted, to have a new trial, based alone on his affidavit of his own insanity, would be to offer a high premium for every conceivable form, and an incalculable amount, of perjury.

The grounds of this motion in arrest filed by defendant have all been discussed as above.

For these reasons the judgment will be affirmed. Judges Wagner and Napton absent; the other Judges concur.