## THE STATE v. BUTLER, *Appellant*.

1. **Larceny**: IMPORTING GOODS STOLEN IN ANOTHER STATE: CONSTITUTIONAL LAW: WITNESS. Section 3, p. 511, Wag. Stat., which provides that a person who shall bring into this State property stolen in another, shall be punished in the same manner as if the theft had been committed here, is not in conflict with that provision of the constitution which guarantees to the accused compulsory process for his witnesses. That provision has reference only to such process as the State can execute within her own borders. The fact that the witnesses may be beyond the reach of her process can be no obstacle in the way of conviction.

2. **New Trial**: DEPOSITIONS IN CRIMINAL CASES. The fact that a witness for the defense, who resides beyond the limits of the State, is absent from the trial, is no ground for a new trial in a criminal case, when no effort has been made to obtain his deposition; neither are acts of intimidation practiced upon witnesses after they have given their testimony, nor newly discovered evidence which is merely cumulative or calculated to impeach or discredit a witness who has sworn at the trial.

*Appeal from Jackson Criminal Court.*—HON. HENRY P. WHITE, Judge.

*Kemp & Collier* for appellant.

1. Sec. 3, p. 511, 1 Wag. Stat., is unconstitutional. The 14th amendment to the federal constitution, and sec-

| | |
|---|---|
| 67 | 59 |
| 38a | 659 |
| 67 | 59 |
| 101 | 683 |
| 67 | 59 |
| 104 | 571 |
| 67 | 59 |
| 108 | 431 |
| 67 | 59 |
| 114 | 433 |
| 115 | 398 |
| 117 | 583 |
| 67 | 59 |
| 58a | 407 |
| 67 | 59 |
| 130 | 216 |
| 67 | 59 |
| 65a | 144 |
| 67 | 59 |
| 144 | 30 |
| 67 | 59 |
| 161 | 492 |
| 67 | 59 |
| 171 | ²557 |

State v. Butler.

tion 2, article 4 of said constitution prohibits such legislation in the State. At common law, the citizen could not be put more than once in jeopardy for the same offense, and this principle has been ingrafted into the constitution of every State and the federal government. Section 22, bill of rights, constitution of 1875, guarantees to every citizen the right to meet the witnesses against him face to face, and to have process to compel the attendance of witnesses in his behalf. A statutable crime of larceny has been created in violation of the State and federal constitution. *State v. Orr*, 64 Mo. 339; 4 Whart. Am. Crim. Law, pp. 185, 168; 7 Cal. 395; Meigs' Rep. 195; *State v. McO'Blennis*, 24 Mo. 402; *Maryland v. McCulloch*, 4 Wheat. 316; *Ableman v. Booth*, 21 How. 506; 1 Kent Com., (8 Ed.) p. 190; *State v. Comfort*, 5 Mo. 357; *U. S. v. Clayton*, 2 Dillon C. C. 219.

2. The character of the proceedings was a surprise upon defendant and his counsel, and, under the law, entitles him at least to a new trial. *State v. Arter*, 65 Mo. 653.

*J. L. Smith* Attorney-General, for the State.

A person committing a larceny in one State can be indicted and punished therefor in another State, into which he has brought the stolen property. Sec. 3, p. 511, Wag. Stat.; *People v. Williams*, 24 Mich. 156; *State v. Hemmaker*, 12 Mo. 453; *State v. Williams*, 35 Mo. 229; *State v. Bennett*, 14 Iowa 479; *Hamilton v. State*, 11 Ohio 435; *Watson v. State*, 36 Miss. 593. And if this indictment had alleged the stealing in Johnson county, Kansas, and the bringing of the stolen property into Jackson county, Missouri, as defendant insists it should have done, it would have been bad. *Johnston v. State*, 47 Miss. 671; *People v. Mellon*, 40 Cal. 648.

2. It is of no consequence that defendant could not have compulsory process for the witnesses residing out of

the State, as he could have taken their depositions.  Sec.
11 *et seq.* p. 1096, 2 Wag. Stat.

3.  The motion for a new trial, and affidavits in support thereof, are without merit.  *State v. Carr*, 1 Fost. (N. H.) 166.

SHERWOOD, C. J.—The defendant, indicted and convicted of stealing a horse, appeals to this court.

I.  The chief point urged upon our attention is the unconstitutionality of the statute under which the defendant was indicted.  The substance of that statute is, that persons obtaining property in another State or county, by theft or robbery, and bringing such property into this State, may be indicted and punished for larceny in any county in this State, into or through which such property may be brought, in the same manner as if the property had been feloniously taken or stolen in this State.  (1 Wag. Stat., 511, § 3.)  The constitutionality of this statute was affirmed by this court some twenty-nine years ago, in the case of *Hemmaker v. The State*, (12 Mo. 453).  In the *State v. Williams*, (35 Mo. 229,) although the constitutional validity of the act was not discussed, yet it was said there that whether larceny committed in another State could be punished in this, did not arise, since the statute made it a punishable offense to bring stolen property into this State. The Supreme Court of Michigan has held a similar statute valid.  The *People v. Williams*, (24 Mich. 156).  In Ohio, (*Hamilton v. State*, 11 Ohio 435), Iowa, (*State v. Bennett*, 14 Ia. 479,) and Mississippi, (*Watson v. State*, 36 Miss. 593,) it is held that by the common law, and independent of statutory provision, where property is stolen in one State or jurisdiction, and brought into another, it is a new, fresh and distinct larceny.  The case cited from Mississippi, considers the authorities and discusses the question with distinguished ability, showing that the great current of authority gives recognition to the view just noted.  But, as shown in *Hemmaker v. State*, *supra*, we are relieved of any

necessity of discussing the common law rule, as our stat-
ute has made the offense with which the defendant stands
charged, punishable as larceny, and this is sufficient for us.
If the defendant, by bringing stolen property into this
State, has rendered himself amenable to our laws, it is a
matter of no concern to us, nor justification to him, that
he had elsewhere, and in another jurisdiction, committed
a separate and distinct felony respecting the same subject
matter. And if we accept the evidence as true, and the
verdict based thereon as correct, he has done this, whether
regard be had to our statutory rule, or that of the common
law. At the present term of the court we held that our
statute allowing conviction for larceny in the county into
which the stolen property was brought from another coun-
ty in this State, was but declaratory of the common law
that the bringing of stolen property into such county, was
larceny in the latter, (State v. Smith,) and we there further
held, that the indictment properly charged the larceny as
done in the county where the thief was taken with the
property. As to that provision of the constitution which
allows the accused to have compulsory process for wit-
nesses, we discover not the slightest antagonism between
that and the statute under consideration. It is of frequent
occurrence in criminal prosecutions, that witnesses are be-
yond the reach of compulsory process of that jurisdiction
where the prisoner is arrested, and yet this is never deemed
to be an obstacle in the way of ultimate conviction. If it
were, many a felon would escape punishment altogether.
That constitutional provision has evident reference to only
such process as the State, where the prosecution is had, can
execute within her own borders. If the argument that de-
fendant cannot be tried but where he can have compul-
sory process for his witnesses, be sound, then when taken
to Kansas to be tried for the original larceny, precisely the
same difficulty would be encountered, for on arrival there,
the State of Kansas would possess no power to execute
criminal process within our borders for defendant's wit-

nesses resident in this State; so that the result would be the defendant could not be tried at all. The bare statement of such an argument, and the results which would flow from its being successful, constitute and accomplish its ample refutation.

II. The principal witness, Edward Young, resides in Kansas City, and he it was whose testimony identified the prisoner; and that the horse was stolen in Kansas and brought into Jackson county, is abundantly established. The prisoner's own testimony is unsatisfactory and somewhat contradictory, and notwithstanding his attempted proof of an *alibi*, we think now, as we did when applied to for a *supersedeas*, that the testimony was sufficient, the cause fairly tried and the verdict should not be disturbed.

III. As to the motion for a new trial based upon newly discovered evidence, it is sufficient to say that it discloses not the slightest attempt at diligence. Although witnesses in Kansas could not be reached by our process, yet under the statute, their depositions could have been taken. (2 Wag. Stat. 1096, § 11, *et seq.*) But no effort in this direction was made. The defendant, too, as well as his father, must have been as conversant with the hostile feelings of some of the witnesses towards him before, as after the trial. And as to any intimidation, it seems to have occurred after the trial, and against those who had already testified. Besides, the testimony was merely cumulative, and its effect would have been merely to discredit or impeach a former witness. (*State v. Carr*, 1 Fost. N. H. 166; *Richardson v. Farmer*, 36 Mo. 35; *State v. Ray*, 53 Mo. 345, and cases cited.) As to the affidavit of John Butler, the father, he only speaks of a witness whose name he does not give, who resides in Johnson county, Kansas, who, if present, would only have sworn to good character. When this witness was called upon, does not appear; nor is the affidavit of the witness produced. (See authorities above cited.) In addition to the above, both defendant and his father could have testified to his good character,

which was not done, and if done, would not have availed anything, if the jury regarded the evidence of defendant's guilt as clear. We discover no error in the record, and affirm the judgment. All concur, except Hough, J., who was not present at the argument.

AFFIRMED.