SNYDER v. BURNHAM *et al.*, *Appellants.*

1. **Partnership.** Persons jointly conducting a mining venture are partners, though there is no agreement for a partnership.

2. This court will not review the action of the trial court sitting as a trier of fact in a law case.

3. **Motion for New Trial:** NEWLY DISCOVERED EVIDENCE. A motion for a new trial on the ground of newly discovered evidence is properly overruled when the affidavit in support of the motion fails to disclose legal diligence to discover the evidence before trial, or when the evidence is merely cumulative.

*Appeal from Dade Circuit Court.*

AFFIRMED.

*E. J. Smith, L. W. Shafer* and *D. P. Stratton* for appellant Stevenson.

*D. A. DeArmond* and *B. G. Thurman* for respondent.

NORTON, J.—This suit was commenced upon an account, in the Dade county circuit court, to recover from defendants the sum of $209.25, and interest, for goods sold and delivered and money paid to defendants and persons in their employ while said defendants, as alleged, were engaged as partners in the mining business. Defendant Burnham made default, and Stevenson answered, denying every material allegation of the petition and each and every item of the account. The cause was tried by the court without the intervention of a jury, and judgment rendered for plaintiffs for the sum of $212.40, from which defendant Stevenson has appealed to this court, and assigns as the chief grounds of error the action of the court in giving and refusing instructions, and also that there was no evidence that defendants were partners.

The evidence tended to show that prior to September 25th, 1876, defendant Burnham and one Van Dreaser had 1. PARTNERSHIP. an interest in a pump-shaft on the land of

the Dade County Mining & Smelting Company, which was being sunk for lead ore; that about the date above mentioned, defendant Stevenson bought the interest of said Van Dreaser in said shaft. Defendant Burnham testified that from the 25th day of September, 1876, to February 27th, 1879, he and Stevenson were partners in running said pump-shaft, that he had no talk with Stevenson about his coming into the shaft and no arrangement was made between them except he said " he had bought out Van Dreaser and would help bear expenses;" and that they were unable to prosecute the work without aid, and that the mining was carried on under the name of Burnham & Co.; that he arranged with plaintiffs to pay the hands in their employ in working said shaft out of the store upon his, Burnham's orders, and that he was to give plaintiffs warrants issued by the Dade County Mining & Smelting Company as advances on mineral, as so much cash for goods furnished as aforesaid; that the account sued on was for goods so furnished and cash in excess of said warrants, and was correct. Stevenson in his evidence admits the purchase on the 28th day of September of Van Dreaser's interest in said pump-shaft; but says that he and Burnham did not begin work on the pump-shaft till the 2nd day of October, 1876; while he worked on the Burnett lot Burnham worked on the pump-shaft. He further stated that they were to furnish two hands on the pump-shaft and the Mining & Smelting Company were to allow them $9 per week for running the engine. The Mining & Smelting Company were to pay the expenses of running the shaft. Burnham told witness from time to time that he was keeping the time of the hands and getting warrants and settling with them. Some of the men complained to witness that they had to go to plaintiffs for pay. Witness told them they could get their pay at the office. Witness further testified: " We were mining for lead under the Mining & Smelting Company. The pump-shaft was regarded as a test, and the company were anxious to have it pushed. We were

not able to bear the entire expense, and the company made these advances to aid us; they were to be repaid by us out of the mineral if we should get any out of the shaft, all except for the services of the engineer." Mr. Taggart, president of the smelting company, testified that he drew up the contract between Stevenson and Van Dreaser on the 28th day of September, 1876; that the mining company furnished the money to sink the shaft; Burnham kept the books, had the management of the business of the pump-shaft, gave the time of the men every Saturday and received the warrants to pay them, which were generally issued in gross. The evidence tended further to show that Stevenson, when notified by plaintiffs of the account and that he would be looked to for payment, requested it to be made out, and when Snyder, the collector for plaintiffs, told him they wanted it paid, giving him the amount of it, he said he knew there was an account but did not think it was so large.

In the light of this evidence we are enabled to see that defendants were engaged in the enterprise of sinking a shaft for the purpose of obtaining lead ore, that it could not be carried on without laborers, that these laborers were employed, that being unable to meet the expenses thus incurred in the prosecution of the business it was arranged by Burnham with plaintiffs that they should pay the hands employed out of their store on his orders, and that Burnham was to turn over to them the warrants or checks issued by the Mining & Smelting Company as an advance on mineral prospectively to be raised out of said shaft, as so much cash in payment of the amounts so furnished the hands, and that the Mining & Smelting Company were to be repaid or re-imbursed for such advancements out of the mineral which might be taken out of said shaft by Burnham & Stevenson. In view of this evidence we are of the opinion that the objection made that there is no evidence of partnership, is not well taken.

In the case of *Duryea v. Burt*, 28 Cal. 569, it was held

that if two or more persons acquire a mining claim for the purpose of working the same and extracting the mineral therefrom, and actually engage in working the same, and share according to the interest of each the profit and loss, the partnership relation subsists between them, although there is no express agreement to become partners, or to share in the profits and losses. So in Rockwell on Mines, p. 578, it is said: "It may be concluded that when persons acquire interest in lands apparently for the sole purpose of working the mines in them, they must be considered as entering into a commercial partnership." 3 Kent 42. It follows from the above, when applied to the facts of this case, that the partnership relation existed between defendants in mining in said pump-shaft. The court gave instructions for plaintiffs embracing this theory of the case, and refused counter instructions offered by defendants, and in so doing did not err.

It is not necessary to discuss the question raised in the brief of counsel as to whether one partner in a mining partnership can bind his co-partner by issuing bills of exchange or negotiable notes in the name of the firm, inasmuch as no such question is presented in the facts in this record.

One item of the account sued on is for $60 cash, and it appears from the evidence of Burnham that this money was expended in the purchase of a note for lumber, the balance on which amounted to $70, and that the note was purchased with the consent of Stevenson, and the lumber used in the shaft. Stevenson contradicted Burnham in this respect, and we will not undertake to decide between them, that being the province of the trial court sitting in this case as a jury.

It was also alleged in the motion for new trial sustained by affidavit, that since the trial defendants had discovered 3. MOTION FOR NEW material evidence. The court did not err TRIAL: newly discovered evidence. in overruling the motion on this ground, as the affidavit did not disclose legal diligence on defendants'

part to discover the evidence before trial, and as the evidence was merely cumulative. *State v. Ray*, 53 Mo 345.

Judgment affirmed, in which all concur.