STATE OF MISSOURI, Respondent, v. JESSE DRAUGHN, Appellant.

Springfield Court of Appeals, January 3, 1910.

1. CRIMINAL LAW: Evidence. Courts and juries are not limited in searching for the truth to the mere words of a witness.

2. ————: ————: Evidence Sufficient to Sustain a Conviction. It is not necessary to sustain a conviction that the evidence should show the guilt of defendant beyond the possibility of a doubt, but only beyond a reasonable doubt.

3. ————: Violating Local Option Law: Sufficiency of Evidence. In a trial of defendant for violating the local option law, where the State's witness was an unwilling witness, but he testified that he called at defendant's drugstore for a "pint" and paid him fifty cents for it and he thought he was getting whisky; but that he bought it for another person and did not know that it was whisky; held sufficient to uphold a verdict of guilty against defendant.

4. ————: Practice: Witnesses: Court's Examination of Witness. The trial court has the undoubted right to question or cross-question any witness, provided this is done within such bounds as control attorneys in similar interrogations.

5. ————: ————: ————: Leading Questions. When in the opinion of the court a State's witness is unfriendly to the State, it is not error for the court to permit the prosecuting attorney to ask leading questions.

State v. Draughn.

6. ——: ——: ——: Refreshing Memory of Unwilling
or Forgetful Witness. The rule in this State is that the State
cannot impeach its own witness by proving previous statements
of the witness contradictory to his testimony; but this rule
does not mean that an unwilling or a forgetful witness cannot
have his memory refreshed by calling his attention to previous
testimony or statements.

Appeal from Dade Circuit Court.—*Hon. B. G. Thurman,* Judge.

AFFIRMED.

*Neale & Newman* for appellant.

GRAY, J.—This is an appeal by the defendant from the judgment of the Dade Circuit Court, assessing a fine of $300 against him, after trial by jury, on an indictment, charging him with selling intoxicating liquors, in violation of the Local Option Law.

There is only one question in the case, and that is: Was the evidence sufficient to support the verdict?

The State relied for a conviction as to what was sold, by one J. L. Berry. This witness testified on direct examination: "Q. Do you know Mr. Draughn, the defendant in this case? A. Yes, sir. Q. What business was he engaged in last fall? A. Well, he was in the drug business, I suppose, last fall. Q. Where was he in business? A. South Greenfield. Q. Were you at his place of business there? A. Yes, sir. Q. Did you buy anything from Mr. Draughn? A. Yes, sir. Q. What did you get from him? A. Well, I suppose it was—I got a half pint of stuff; I don't know what it was; no, a pint; I suppose it was whisky. Q. You called for whisky when you bought that, did you not? A. Well, sir, I disremember whether I called for whisky or whether I just went in and asked for a pint. Q. What makes you suppose it was whisky? A. Well, that was what the fellow asked me to get for him, was whisky. Q. Did you taste it? A. No, sir. Q. What

color was it? A. I disremember whether it was wrapped up. Q. Don't you know what you called for when you went in the store? A. No, sir, I don't recollect just exactly how I called for it. I might have called for a pint, or I might have called for a pint of whisky; I just disremember what I did do. Q. You thought you was getting whisky when you went in there and got that? A. Yes, sir. Q. Who was in the front room when you came out, Mr. Berry? A. Well, sir, I believe Mr. Sexton was in there, Mr. Sexton bought a comb there that day."

After these questions and answers, followed a long list of questions by the prosecuting attorney and the court. These questions were asked and answered over the objection of the defendant's counsel. The witness further testified that he paid fifty cents for it, but whether he bought it of Mr. Draughn or someone else, he did not remember, as it was about the time Draughn was selling out.

On cross-examination, the witness testified, in speaking of the sale: "I had been to Lockwood and I came on back there waiting for a train, and I went down there to see Mr. Jones, and he asked me to go up there and get this stuff for him, but I don't recollect whether he said, 'Go up there and get me a pint,' or a 'pint of whisky.' I disremember what he said. I don't remember whether I called for a pint or a pint of whisky, and I disremember whether it was wrapped or not."

The witness, Sexton, was placed on the stand, and he testified that he bought a comb of defendant that day, and that Mr. Berry, he believed, was on the premises at that time, and standing there when he bought the comb.

This is substantially the testimony for the State, except it was admitted that local option was in force in the county at the time of the sale. The defendant was the only witness offered in his behalf, and the fol-

lowing is his examination in chief: "Q. Mr. Draughn, are you guilty of this charge? A. No, sir. Q. That is all."

The State attempted to cross-examine him, but his counsel objected, so that the cross-examination consisted of the following: "Q. You have told the jury all you are going to tell them about this case? A. Yes, sir, I ain't got nothing more to say; not guilty is all."

The testimony narrowed down, proves the following facts: That a man by the name of Jones said to Mr. Berry: "Go up to the drugstore and get me a pint." The train was about to move and the witness ran to the drugstore and called for a pint or a pint of whisky, and it was furnished to him and he paid fifty cents for it. Courts and juries are not limited in searching for the truth, to the mere words of a witness. When a man says to another, "Go up to the drugstore and get me a pint," and the man does so and goes into the store and says to the druggist, "I want a pint," and pays him fifty cents for it, there is not a shadow of a doubt but what it was whisky he wanted, and whisky he got. It is not necessary to sustain a conviction that the evidence should show the guilt of defendant beyond the possibility of a doubt, but only beyond a reasonable doubt, and there can be no reasonable doubt of the guilt of the defendant.

Complaint is made of the action of the trial court in asking the witness, Berry, questions, and permitting the State to cross-examine him in regard to previous statements made by him. It is a well-known fact that in this class of cases, the memory of State's witnesses is often very poor. If this witness had purchased a pint of benzine or castor oil, we have no doubt but he and the defendant would have remembered every detail of the transaction.

"The trial court has the undoubted right to question or cross question any witness, provided this is done within such bounds as control attorneys in similar in-

terrogations." [State v. Lockett, 168 Mo. 480; State v. Pagels, 92 Mo. 300.] The court was of the opinion that the witness was unfriendly to the State, and therefore, no error was committed by the court in permitting the prosecuting attorney to ask him leading questions. [State v. Duestrow, 137 Mo. 44, 38 S. W. 554, 39 S. W. 266; State v. Keith, 53 Mo. App. 383.] The prosecuting attorney was permitted to ask the witness if he had not testified before the grand jury that he was told to get whisky, and that whisky was what he called for when he went into the drugstore, and he was also shown a statement of what he testified to, signed by him. The court permitted this, for the purpose of refreshing the memory of the witness. To intelligently pass upon this assignment of error, the following is material: The witness testified that he did not remember whether he was told to get a pint, or a pint of whisky, and he did not remember whether he called for a pint, or a pint of whisky. He was examined several months after the transaction, and for the purpose of refreshing his memory, the prosecuting attorney asked him these questions.

The rule in this State is, that the State cannot impeach its own witness by proving previous statements of the witness contradictory to his testimony. But this rule does not mean that an unwilling or a forgetful witness cannot have his memory refreshed by calling his attention to previous testimony or statements. [State v. Duestrow, 137 Mo. l. c. 85, 38 S. W. 554; 39 S. W. 266; Ashby v. Gravel Road Co., 111 Mo. App. l. c. 83, 85 S. W. 957.] Of course the party calling the witness cannot impeach him by offering contradictory evidence for that purpose.

In State v. Duestrow, the court said: "The above cited authorities fully justify the asking of the questions propounded to this unwilling witness, and it was unnecessary for the State to plead surprise or of having been misled, since both those elements were patent to the most casual observation, since nothing could

more conduce to surprise than to have a witness who had previously testified to the whole of a short conversation, but a few months before, and then, afterwards forget, or pretend to forget, the latter and more striking portion of that conversation. Nor does it at all affect the propriety of such questions that they may incidentally have the effect of impeaching such witness. Courts should not be averse to letting in the light of day on such reprehensible transactions."

In Ashby v. The Gravel Road Co., the witness was examined as to his evidence on the former trial, and complaint was made. The court said, if the witness was reluctant or his memory was clouded, we can see no impropriety in the course of his examination. It was a matter resting very largely with the discretion of the trial judge.

In George v. McGovern, 53 N. W. 899, and Bullard v. Parsall, 53 N. Y. 231, the courts expressly hold that such questions may be asked for the purpose of refreshing the recollection of the witness.

The verdict of guilty comes with the approval of the learned trial court, and he must have been thoroughly satisfied of the defendant's guilt, or he would have unhesitatingly set the verdict aside. He was in a much better position than we are, to know the truth of the matter, and with due deference to his duty and judgment, we will not disturb this judgment. It is accordingly affirmed. All concur.